**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| NURJAHAN KHAN,<br><br>  Plaintiff,<br><br>v.<br><br>FREEDOM MORTGAGE<br>CORPORATION,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 25-cv-04246-LKG<br><br>Dated: July 13, 2026 |

**<u>MEMORANDUM OPINION</u>**

## I.   INTRODUCTION

In this civil action, the Plaintiff, Nurjahan Khan, brings claims against the Defendant, Freedom Mortgage Corporation ("Freedom Mortgage"), arising from the modification of a mortgage loan that she has with Freedom Mortgage.  ECF No. 5.  Freedom Mortgage has moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No 8.  The motion is fully briefed.  ECF Nos. 8, 9 and 11.  No hearing is necessary to resolve the matter.  *See* L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** Freedom Mortgage's motion to dismiss and (2) **DISMISSES** Counts II and III of the complaint.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

In this civil action, Ms. Khan brings claims against Freedom Mortgage, arising from the modification of her mortgage loan with Freedom Mortgage and the related attempt to foreclose on her home.  ECF No. 5.  Specifically, Ms. Khan asserts the following claims against Freedom Mortgage in the complaint: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"); (2) violation of the Maryland Consumer Debt Collection Act ("MCDCA"); and (3) violation of the Maryland Consumer Protection Act ("MCPA").  ECF No. 5 at 12, 14 and 15.  As relief, Ms. Khan seeks to recover, among other things, actual and

---

[1] The facts recited in this memorandum opinion are taken from the Plaintiff's complaint, the Defendant  motion to dismiss complaint, the Plaintiff's response in opposition and the Defendant's reply brief.  ECF Nos. 5, 8, 9 and 11.

statutory damages, costs and attorney's fees from Freedom Mortgage.  *Id.* at ¶¶ 64, 69 and 80.

The Parties

Plaintiff Nurjahan Khan is a resident of Maryland and the owner of a condominium unit located at 19609 Gelway Bay Circle in Germantown, Maryland.  *Id.* at ¶¶ 2 and 9.

Defendant Freedom Mortgage is the mortgage servicer of Ms. Khan's mortgage loan.  *Id.* at ¶ 3.

The Plaintiff's Loan

As background, on March 27, 2006, Ms. Khan purchased a condominium unit located in Germantown, Maryland.  *Id.* at ¶ 9.  To finance this purchase, Ms. Khan entered into a mortgage loan with Prosperity Mortgage Company for $225,000, which was secured by a deed of trust in the same amount.  *Id.*  Ms. Khan later refinanced the mortgage with Quick Loans, who offered her a forbearance period after she lost income due to the COVID-19 pandemic.  *Id.* at ¶ 11.

During the forbearance period, the loan servicing was transferred to Freedom Mortgage.  *Id.* at ¶ 12.  Towards the end of the forbearance period, Freedom Mortgage offered Ms. Khan several options to cure the outstanding balance of approximately $22,500 in unpaid payments.  *Id.* at ¶¶ 13–14.  And so, Ms. Khan chose a "Combination Partial Claim and Loan Modification," which modified her mortgage and placed the outstanding balance in the form of a partial-claim deed of trust, allowing for the balance of the mortgage to remain in the loan without requiring Ms. Khan to pay interest, or to make monthly payments.  *Id.* at ¶ 14.

Ms. Khan alleges that she received paperwork from Freedom Mortgage that reflected a partial claim deed for $51,146.60, a set interest rate of 3%, and set monthly payments of $999.23.  *Id.* at ¶¶ 15–16.  But Ms. Khan alleges that the loan modification documents contained a typographical error that described her as "A SINGLE MAN," even though she is a woman.  *Id.* at ¶ 17.  And so, Ms. Khan alleges that she inquired with a Freedom Mortgage representative regarding how to proceed and she was instructed not to sign the documents and to wait approximately two weeks for corrected paperwork.  *Id.* at ¶ 18.

Ms. Khan alleges that she waited two weeks without receiving new paperwork from Freedom Mortgage.  *Id.* at ¶ 19.  And so, she resumed monthly payments at the amount stated in the November 2021 loan-modification documents in January 2022.  *Id.*

Approximately three months later, Ms. Khan received a new set of loan modification documents from Freedom Mortgage; but she alleges that these documents were the same as

2

the November 2021 documents and contained the same typographical errors. *Id.* at ¶ 21. And so, Ms. Khan alleges that she, again, contacted Freedom Mortgage to resolve the typographical error and receive new documents to sign, and that a representative informed her that they would send new documents by May 2022. *Id.* at ¶ 22.

Ms. Khan alleges, however, that she did not receive the promised loan-modification documents in May 2022. *Id.* In this regard, Ms. Khan alleges that Freedom Mortgage told her that she no longer qualified for the 3% interest rate and would have to repeat the loan modification process. *Id.* at ¶ 23. And so, Ms. Khan filed a formal complaint with the Consumer Financial Protection Bureau ("CFPB") in September of 2022. *Id.* at ¶ 24. Ms. Khan alleges that, thereafter, Freedom Mortgage agreed to honor the 3% interest rate in the initial November 2021 loan-modification offer and send her a new loan-modification offer, which she received on October 29, 2022. *Id.*

Although the new loan modification documents contained the same typographical error as the earlier loan modification documents, Ms. Khan alleges that she signed the loan-modification documents. *Id.* at ¶ 25. But Ms. Khan alleges that, in late November 2022, Freedom Mortgage sent her a letter stating her monthly payment would increase from $999 to $1,006. *Id.* at ¶ 27. Ms. Khan also alleges that, in December 2022, Freedom Mortgage informed her that there were missing papers, and that they would send a different set of loan-modification documents for signature. *Id.* at ¶ 28. And so, Ms. Khan alleges that she received the new loan modification documents from Freedom Mortgage in December of 2022, and that she signed and submitted the documents to Freedom Mortgage during the first week of January 2023. *Id.* at ¶ 29.

Lastly, Ms. Khan alleges that she received another set of unsigned loan-modification documents in late January 2023. *Id.* at ¶ 30. And so, she filed a second CFPB complaint in March 2023, to which Freedom Mortgage responded by stating it had no knowledge that Ms. Khan had changed her gender and therefore would not be able to honor the promised 3% interest rate. *Id.* at ¶ 31.

Ms. Khan alleges that, thereafter, Freedom Mortgage: (1) rejected her monthly mortgage payments; (2) locked her out of its online portal; and (3) continued submitting her loan-modification documents, resulting in erroneous credit-bureau reporting. *Id.* at ¶¶ 32 and 36. Ms. Khan also alleges that she received a delinquency notice from Freedom Mortgage's foreclosure lawyers threatening to foreclose on her home, based on the "fictitious default" in March 2023. *Id.* at ¶¶ 33 and 37.

<u>The Plaintiff's August 2024 and October 2024 Letters</u>

Ms. Khan alleges that she, through her counsel, sent Freedom Mortgage a Qualified Written Request ("QWR") and Notice of Error ("NOE"), pursuant to RESPA, on August 14, 2024 (the "August 2024 Letter"). *Id.* at ¶ 43. In this regard, Ms. Khan alleges that the August 2024 Letter alleged that Freedom Mortgage failed to reverse all interest and fees arising from its own inability to deliver proper partial-claim paperwork in November 2021. *Id.* at ¶ 43. And so, Ms. Khan demanded that the charged fees and interest be removed from her account. *Id.* In addition, Ms. Khan requested detailed accounting information in the letter, including: (1) a complete payment history showing how each payment was applied; (2) an itemized breakdown of claimed arrears, fees and charges; (3) a breakdown of escrow charges and reasons for any increase within the past 24 months; (4) copies of annual escrow statements since January 2020; (5) a detailed explanation of all "Recoverable" or "Corporate" Advances; (6) copies of every statement and notice sent since February 1, 2020; (7) copies of the note, deed of trust and all modifications; and (8) a breakdown of the makeup of the two Partial Claim amounts and two monthly payment figures. *Id.* at ¶ 45.

Ms. Khan acknowledges that Freedom Mortgage responded to her August 2024 Letter by sending certain requested documents on September 25, 2024. But Ms. Khan alleges that Freedom Mortgage failed to respond to her accounting questions. *Id.* at ¶ 46.

Ms. Khan alleges that on October 8, 2024, Ms. Khan sent a second QWR/NOE to Freedom Mortgage, requesting information about the $345 "appraisal exterior" charge and demanded a copy of the appraisal and invoice for all services relating to that charge" (the "October 2024 Letter"). *Id.* at ¶ 49. Ms. Khan acknowledges that Freedom Mortgage also responded to the October 2024 Letter on November 8, 2024, by providing a copy of the appraisal, but Freedom Mortgage declined to provide an invoice documenting $345 charge. *Id.* at ¶ 50. But Ms. Khan alleges that Freedom Mortgage refused to make the accounting adjustments that she demanded in the QWRs. *Id.* at ¶ 53. And so, Ms. Khan also alleges that she suffered emotional distress and incurred costs, fees and higher interest rates, as a result of Freedom Mortgage's conduct. *Id.* at ¶ 54.

<u>The Plaintiff's Claims</u>

In the complaint, Ms. Khan asserts the following three claims against Freedom Mortgage: (1) violation of the Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.35 (Count I); (2) violation of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201 *et seq*. (Count II); and (3) violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq*. (Count III). *Id.* at 14,

4

19 and 20.  With regards her RESPA claim in Count I of the complaint, Ms. Khan alleges that Freedom Mortgage was obligated under 12 C.F.R. § 1024.35 and § 1025.36 of Regulation X to: (1) timely accept and apply her payments; (2) only assess fees or charges that it had reasonable and legal basis to impose; (3) provide her with accurate information related to foreclosure; and (4) cease all negative credit reporting of the disputed payments subject to the her QWR/NOE.  *Id*. at ¶ 56.  But, Ms. Khan contends that Freedom Mortgage violated RESPA by failing to conduct a reasonable investigation of her QWRs, failing to correct her account, and failing to provide her with requested appraisal invoice.  *Id*. at ¶ 63.

In Count II of the complaint, Ms. Khan alleges that Freedom Mortgage violated the MCDCA by claiming certain sums due that they knew were not in fact due and owed under her mortgage loan, including certain interest and fees charged on her account.  *Id.* at ¶ 67. And so, Ms. Khan alleges that she suffered actual damages and losses (including economic and non-economic) in a sum in excess of $75,000, as a result of Freedom Mortgage's conduct.  *Id.*

Lastly, in Count III in the complaint, Ms. Khan alleges that Freedom Mortgage violated the MCPA, by making materially false and misleading oral or written statements, omissions, or other representations related to the amount due, principle balance, and the status of the mortgage loan, which had the capacity, tendency, or effect of deceiving or misleading her in violation of Md. Code Ann., Com. Law § 13-301(1).  *Id.* at ¶ 74.  And so, Ms. Khan seeks to recover damages from Freedom Mortgage.  *Id.* at ¶ 80.

### B.  Relevant Procedural Background

Ms. Khan commenced this civil action on November 19, 2025, in the Circuit Court for Montgomery County, Maryland, Civil Case No. C-15-25-006394, and Freedom Mortgage removed the case to this Court on December 23, 2025.  ECF No. 1.

On January 29, 2026, Freedom Mortgage filed a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof.  ECF No. 8.

On February 12, 2026, Ms. Khan filed a response in opposition to Freedom Mortgage's motion to dismiss.  ECF No. 9.

On February 26, 2026, Freedom Mortgage filed a reply brief.  ECF No. 11.

The motion has been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.  Fed. R. Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) provides that claims that sound in fraud are subject to a heightened pleading standard, which requires that "the circumstances constituting

fraud" be stated "with particularity." Fed. R. Civ. P. 9(b). And so, this Court has held that a plaintiff must plead with particularity, "'who made what false statement, when, and in what manner . . .; why the statement is false; and why a finder of fact would . . . conclude that the defendant acted with scienter . . . and with the intention to persuade others to rely on the false statement.'" *Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 747 (D. Md. 2023) (alterations in original) (quoting *McCormick v. Medtronic, Inc.*, 219 Md. App. 485, 528, 101 A.3d 467, 492–93 (2014)).

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of the plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Ltd.*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

### C. Real Estate Settlement Procedures Act

To state a claim under the Real Estate Settlement Procedures Act's qualified written request ("QWR") provisions, a plaintiff must plausibly allege facts to show: "(1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018) (citations omitted). In this regard, RESPA defines a QWR as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the <u>servicer</u>, that—includes, or otherwise enables the <u>servicer</u> to identify, the name and account of the borrower; and includes a statement of the reasons for the belief of the borrower, to the extent

> applicable, that the account is in error or provides sufficient detail to the <u>servicer</u> regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  RESPA defines "servicing" as:

> [R]eceiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in <u>section 2609 of this title</u>, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).  In addition, Regulation X defines "error," in relevant part, as the "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law," and "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."  12 C.F.R. § 1024.35(b)(2), (5).  Regulation X also requires that the servicer provide a substantive response within thirty business days of a borrower's request for information.  *See id.* § 1024.35(e).

This Court has held that a valid QWR either: "(1) request[s] information related to the servicing of the plaintiff's loan; or (2) alleg[es] an accounting error with plaintiff's loan." *Barr*, 303 F. Supp. 3d at 418.  The Fourth Circuit has also held that a valid QWR alleges disputes regarding the borrower's payments.  *See Morgan v. Caliber Homes Loans, Inc.*, 26 F.4th 643, 649–50 (4th Cir. 2022); *see also* 12 U.S.C. § 2605(e)(3).  But this Court has held that request seeking "'copies of loan documents, assignments of the deed of trust and promissory note and copies of property inspection reports and appraisals and a loan transactional history' do not relate to servicing, and, therefore, do not constitute a valid QWR."  *Barr,* 303 F. Supp. 3d at 418 (quoting *Minson v. CitiMortgage, Inc.*, No. 12-2233, 2013 WL 2383658, at *4 (D. Md. May 29, 2013) (citation omitted).

Lastly, a plaintiff must allege facts to show actual damages to state a plausible RESPA claim.  To recover actual damages, a plaintiff must show that such damages arose "as a result of" the servicer's alleged violation.  *Fox v. Statebridge Co., LLC*, 629 F. Supp. 3d 300, 310 (D. Md. 2022) (citing 12 U.S.C. § 2605(f)(1)(A)).  A plaintiff may also recover statutory damages, upon a showing that the defendant engaged in "a pattern or practice of noncompliance" with the requirements of Section 2605.  12 U.S.C. § 2605(f)(1)(B); *see also Akkus v. Rocket Mortg., LLC*, 715 F. Supp. 3d 726, 732 (D. Md. 2024).  But a plaintiff who fails to establish actual damages may not recover statutory damages.  *Akkus*, 715 F. Supp. 3d

7

at 735. And so, this Court has held that "[t]he only relief available under RESPA is an award of actual damages, along with additional damages in particularized circumstances." *Fox*, 629 F. Supp. 3d at 310.

### D. Maryland Consumer Debt Collection Act

The Maryland Consumer Debt Collection Act prohibits, in relevant part, a debt collector from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist," or "[e]ngag[ing] in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act ("FDCPA"). Md. Code Ann., Com. Law § 14-202(8) and (11). In this regard, the FDCPA "protects consumers from the abusive and deceptive practices employed by some debt collectors." *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 590 (D. Md. 1999) (citation omitted).

To state a claim under the MCDCA, a plaintiff must allege facts to show that: "(1) the defendant 'did not [possess] the right to collect the amount of debt sought'; and (2) the defendant 'attempted to collect the debt knowing that they lacked the right to do so.'" *Barr*, 303 F. Supp. 3d at 420 (quoting *Lewis v. McCabe, Weisberg & Conway, LLC*, No. 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014) (citation omitted)). The "knowledge" requirement under the MCDCA requires the plaintiff to show that the defendant "attempt[ed] to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Fontell v. Hassett*, 870 F. Supp. 2d 395, 407 (D. Md. 2012) (internal citations and quotation marks omitted). But, Section 14-202(11) contains no knowledge requirement. *Parker v. Goldman Sachs Mortg. Co. Ltd. P'shp*, 596 F. Supp. 3d 559, 569 (D. Md. 2022) (quoting *Alexander v. Carrington Mortg. Services, LLC*, 23 F.4th 370, 373 (4th Cir. 2022). In addition, this Court has held that "a dispute over the amount owed is not a challenge to the validity of the underlying debt" under the MCDCA claim. *Lindsay v. Rushmore Loan Mgmt., Services, LLC*, No. 15-1031, 2017 WL 1230822, at *7 (D. Md. Apr. 4, 2017). The Court has also held that a MCDCA claim is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires a plaintiff to plead "with particularity the circumstances constituting fraud." *Butler v. Citizens Bank, N.A.*, No. 17-3417, 2018 WL 2840413, at *4 (D. Md. June 11, 2018); *see also* Fed. R. Civ. P. 9(b).

### E. Maryland Consumer Protection Act

Lastly, the Maryland Consumer Protection Act prohibits unfair, abusive, or deceptive trade practices including, "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and failure to state a material fact

if the failure deceives or tends to deceive." Md. Code Ann., Com. Law § 13-301(1) and (3). To state a claim under the MCPA, a plaintiff must allege facts to show that: "(1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury." *Barr*, 303 F. Supp. 3d at 416 (quoting *Palermino v. Ocwen Loan Servicing, LLC*, No. 14-0522, 2015 WL 6531003, at *2 (D. Md. Oct. 26, 2015) (citation omitted). In addition, a MCPA claim is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires a plaintiff to plead "with particularity the circumstances constituting fraud." *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013); *see also* Fed. R. Civ. P. 9(b).

## IV.    ANALYSIS

Freedom Mortgage has moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6) on several grounds. First, Freedom Mortgage argues that Ms. Khan fails to state a RESPA claim, because: (1) the August 2024 and October 2024 Letters alleged in the complaint do not concern the servicing of a loan; (2) Freedom Mortgage performed its duties regarding the servicing of these requests; and (3) Ms. Khan fails to allege facts to show actual or statutory damages. ECF No. 8 at 8–15. Second, Freedom Mortgage argues that Ms. Khan's MCDCA and MCPA claims are time-barred under Maryland's three-year statute of limitations. *Id*. at 15. Third, Freedom Mortgage argues that Ms. Khan's MCDCA claim is also insufficiently plead and fails to meet the heightened pleading standard under Fed. R. Civ. P. 9(b). *Id*. at 16–19. Lastly, Freedom Mortgage argues that Ms. Khan's MCPA claim is insufficiently plead and fails to meet the heightened pleading standard under Fed R. Civ. P. 9(b). *Id*. at 19–20. And so, Freedom Mortgage requests that the Court dismiss the complaint. *Id*. at 20.

In her response in opposition to Freedom Mortgage's motion to dismiss, Ms. Khan counters that the Court should not dismiss this matter, because: (1) she has sufficiently alleged facts to show that the August 2024 and October 2024 Letters directly relate to the servicing of her loan, Freedom Mortgage failed to perform its duties under RESPA, and to show damages, to support her RESPA claim; (2) her state law claims are not barred by Maryland's three year statute of limitations; (3) she has sufficiently alleged facts to state a plausible MCDCA claim; and (4) she has sufficiently alleged facts to state a plausible MCPA claim. ECF No. 9 at 4-5 and 8–13. And so, Ms. Khan requests that the Court deny Freedom Mortgage's motion to dismiss. *Id*. at 13–14.

For the reasons that follow, a careful reading of the complaint shows that Ms. Khan states a plausible RESPA claim in the complaint, because she alleges facts to show that: (1) the August 2024 Letter relates to the servicing of her mortgage loan; (2) Freedom Mortgage failed to conduct a reasonable investigation of the errors alleged in this QWR; and (3) she suffered damages as a result of Freedom Mortgage's actions. But, the complaint also makes clear that Ms. Khan fails to state a plausible MCDCA claim in this case, because the complaint lacks sufficient facts to show that Freedom Mortgage had knowledge of the invalidity of the debt at issue in this case, but continued to enforce that debt. The complaint also lacks sufficient factual allegations to show that Freedom Mortgage engaged in unfair or deceptive trade practices, to state a plausible claim under the MCPA. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART Freedom Mortgage's motion to dismiss and (2) DISMISSES Counts II and III of the complaint.

### A. The Plaintiff States A Plausible RESPA Claim For The August 2024 Letter

As an initial matter, a careful reading of the complaint shows that Ms. Khan plausibly alleges a RESPA claim in this matter. To state a claim under RESPA's qualified written request ("QWR") provisions, Ms. Khan must allege facts to show: "(1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018) (citations omitted). In this regard, RESPA defines a QWR as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the <u>servicer</u>, that—includes, or otherwise enables the <u>servicer</u> to identify, the name and account of the borrower; and includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the <u>servicer</u> regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). RESPA also defines "servicing" as:

> [R]eceiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in <u>section 2609 of this title</u>, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). In addition, Regulation X defines "error," in relevant part, as the "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law," and "[i]mposition of a fee or charge that

the servicer lacks a reasonable basis to impose upon the borrower." 12 C.F.R. § 1024.35(b)(2), (5).  And so, this Court has held that a valid QWR either: "(1) request[s] information related to the servicing of the plaintiff's loan, or (2) alleg[es] an accounting error with plaintiff's loan."  *Barr*, 303 F. Supp. 3d at 418.

In this case, Ms. Khan alleges that Freedom Mortgage violated RESPA, based upon two letters that she sent to Freedom Mortgage on August 14, 2024 and October 8, 2024, respectively.  *See* ECF No. 5 at ¶¶ 57–64.  The Court is satisfied that Ms. Khan states a plausible RESPA claim with regards to the August 2024 Letter for several reasons.

First, a careful reading of the complaint shows that Ms. Khan sufficiently alleges facts to show that the August 2024 Letter pertains to the servicing of her mortgage loan with Freedom Mortgage.  In this regard, Ms. Khan alleges in the complaint that the August 2024 Letter "alleged that Freedom Mortgage had failed to reverse all interest and fees arising from its own inability to deliver proper partial-claim paperwork in November 2021 and demanded that those charges be removed from [her] account."  *Id.* at ¶ 43.  Ms. Khan also alleges that the August 2024 Letter "identified a dramatic increase in the amounts of both the monthly payment and subordinate 'partial claim' lien and asserted that "the increase in monthly payment and partial claim amount must contain wrongful fees and interest."  *Id.* at ¶ 44.

In addition, Ms. Khan alleges that the August 2024 letter requested:

> (a) complete payment history showing how each payment was applied (principal, interest, escrow, suspense, etc.); (b) an itemized breakdown of claimed arrears, fees, and charges; (c) a breakdown of escrow charges and reasons for any increase within the past 24 months; (d) copies of annual escrow statements since January 2020; (e) a detailed explanation of all 'Recoverable' or 'Corporate' Advances; (f) copies of every statement and notice sent since February 1, 2020; (g) copies of the note, deed of trust, and all modifications; and (h) a breakdown of the makeup of the two Partial Claim amounts and two monthly payment figures referenced in Error 2.

*Id.* at ¶ 45.  These factual allegations, take as true, show that the August 2024 Letter pertains to the servicing of Ms. Khan's mortgage loan with Freedom Mortgage.  *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 650 (4th Cir. 2022) (holding that letters related to a dispute regarding the borrower's payments constitute valid QWRs); *see also* 12 U.S.C. § 2605(e)(1)(B); *Barr*, 303 F. Supp. 3d at 418.  And so, Ms. Khan has alleged sufficient facts that, taken as true, show that the August 2024 Letter is a QWR.  *Barr*, 303 F. Supp. 3d at 418 (holding that a valid QWR either: "(1) request[s] information related to the servicing of the plaintiff's loan, or (2) alleg[es] an accounting error with plaintiff's loan").

11

Second, the complaint contains sufficient factual allegations to show that Freedom Mortgage failed to perform its obligations under RESPA in response to the August 2024 Letter. Regulation X requires that the servicer provide a substantive response to a QWR within thirty business days of a borrower's request for information. 12 C.F.R. § 1024.35(e). In the complaint, Ms. Khan acknowledges that Freedom Mortgage timely responded to the August 2024 Letter, on September 25, 2024, by providing the following information: (1) payment history; (2) escrow account statement from October 2023; (3) Note; and (4) Deed of Trust. ECF No. 5 at ¶ 46. She also acknowledges that Freedom Mortgage stated there was no arrearage and informed her of the next payment due date. *Id.*

But, Ms. Khan alleges that Freedom Mortgage failed to respond to other questions in the August 2024 Letter about the accounting for her mortgage loan, including failing to provide an explanation for the imposition of fees on her account, or how these fees were calculated. *See id.* at ¶¶ 47–48. Ms. Khan also alleges that Freedom Mortgage failed to conduct a reasonable investigation and to correct the errors identified in the August 2024 Letter related to "its mishandling of her loan modification." *Id*. at ¶ 59. Again, take as true, these factual allegations are sufficient to show that Freedom Mortgage failed to perform its obligations under RESPA to address and resolve the accounting errors alleged in the August 2024 Letter. *Barr*, 303 F. Supp. 3d at 417 (holding that to state a RESPA claim, the Plaintiff must allege facts to show that the loan servicer failed to perform its duties under RESPA).

Third, the Court is satisfied that Ms. Khan sufficiently alleges facts to show that she is entitled to recover actual damages from Freedom Mortgage with regards to the August 2024 Letter. In the complaint, Ms. Khan alleges that she suffered emotional distress and incurred costs, fees, and higher interest rates, as a direct result of Freedom Mortgage's actions. ECF No. 5 at ¶ 54. This allegation, taken as true, is sufficient to plausibly state a claim for actual damages under RESPA, because Ms. Khan specifically alleges that her incurred costs, fees, and higher interest rates occurred as a result of Freedom Mortgage's alleged conduct. *Fox v. Statebridge Co., LLC*, 629 F. Supp. 3d 300, 310 (D. Md. 2022) (holding that a plaintiff must show that damages arose "as a result of" the servicer's alleged violation, to establish actual damages).

While Freedom Mortgage correctly observes that the Court has held that "emotional distress," alone, is not sufficient to show actual damages under RESPSA, the complaint makes clear that Ms. Khan's damages claim couples her alleged emotional distress with the costs, fees, and expenses alleged in the complaint. ECF No. 5 at ¶ 36. And so, Ms. Khan alleges a plausible claim to recover actual damages under RESPA.

12

The Court, however, agrees with Freedom Mortgage that the complaint lacks sufficient factual allegations to support a claim for statutory duties under RESPA. In the complaint, Ms. Khan generally alleges that Freedom Mortgage engaged in a pattern and practice of noncompliance with RESPA for borrowers like herself, and she alleges that Freedom Mortgage's refusal to provide the invoice for an appraisal of her home is "indicative of a systematic failure." *Id.* at ¶ 62. But Ms. Khan's reliance upon her own experience with Freedom Mortgage is not sufficient to show a pattern or practice of non-compliance to recover statutory damages under RESPA. *See Akkus v. Rocket Mortg., LLC*, 715 F. Supp. 3d 726, 733 (D. Md. 2024) (explaining that a single plaintiff in a RESPA case generally cannot rely only on his own experience to plead a pattern or practice of noncompliance).

Given this, Ms. Khan does not state a plausible claim to recover statutory damages under RESPA in this case. And so, for the aforementioned reasons, the Court declines to dismiss Ms. Khan's RESPA claim, based upon the August 2024 Letter, with the exception of her claim for statutory damages.

Ms. Khan's RESPA claim, based upon the October 2024 Letter, is more problematic. Notably, the Court agrees with Freedom Mortgage that Ms. Khan has not alleged facts to show that this letter is a QWR, because she alleges that the October 2024 Letter sought a copy of an appraisal and invoice. ECF No. 8 at 6; *see also* ECF No. 5 at ¶ 49 (alleging that Ms. Khan sent a second QWR/NOE to Freedom Mortgage on October 8, 2024, requesting a copy of the $345 appraisal and a copy of the invoice for all services relating to the charge for this appraisal). The October 2024 Letter is not a valid QWR, because this letter requests a copy of an appraisal. *Barr*, 303 F. Supp. 3d at 418 (holding that a request for a copy of an appraisal is not related to servicing, or an accounting error). Because Ms. Khan cannot pursue a RESPA claim based upon the October 2024 Letter, the Court DISMISSES her RESPA claim based upon the October 2024 Letter. Fed. R. Civ. P. 12(b)(6).

**B. The Plaintiff Fails To States A MCDCA Claim**

Turning to Ms. Khan's MCDCA claim in Count II of the complaint, Freedom Mortgage persuasively argues that this claim is not plausible, because Ms. Khan neither alleges fact to show with particularity how Freedom Mortgage had knowledge of the invalidity of her mortgage debt and continued to enforce that debt, nor how Freedom Mortgage violated the Fair Debt Collection Practices Act. To state a claim under the MCDCA, Ms. Khan must allege facts to show that: (1) Freedom Mortgage "did not [possess] the right to collect the amount of debt sought"; and (2) Freedom Mortgage "attempted to collect the debt knowing that they lacked the right to do so." *Barr*, 303 F. Supp. 3d at 420

13

(quoting *Lewis v. McCabe, Weisberg & Conway, LLC*, No. 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014) (citation omitted). A MCDCA claim is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires a plaintiff to plead "with particularity the circumstances constituting fraud." *Butler v. Citizens Bank, N.A.*, No. 17-3417, 2018 WL 2840413, at *4 (D. Md. June 11, 2018); *see also* Fed. R. Civ. P. 9(b).

In addition, the "knowledge" requirement under the Section 14-202(8) of the MCDCA requires Ms. Khan to show that Freedom Mortgage "attempt[ed] to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Fontell v. Hassett*, 870 F. Supp. 2d 395, 407 (D. Md. 2012) (internal citations and quotation marks omitted). Relevant here, this Court has held that "a dispute over the amount owed is not a challenge to the validity of the underlying debt" under the MCDCA. *See Lindsay v. Rushmore Loan Mgmt., Services, LLC*, No. 15-1031, 2017 WL 1230822, at *7 (D. Md. Apr. 4, 2017). And so, Ms. Khan cannot rely upon factual allegations showing that she disputes the amount owed under her mortgage loan to state a plausible MCDCA claim. *Id.*

Here, a careful reading of the complaint makes clear that Ms. Khan fails to state a plausible MCDCA claim. Ms. Khan alleges in the complaint that Freedom Mortgage violated Sections 14-202(8) and (11) of the MCDCA, by attempting to collect increased fees and interest stemming from the "fictious default" of her mortgage loan and attempting to foreclose on her home. ECF No. 5 at ¶ 69. In this regard, Ms. Khan alleges that Freedom Mortgage claimed certain sums due under her mortgage loan, that were not in fact due and owing, including the interest and fees charged on her account. *Id.* at ¶ 67.

But, the complaint lacks factual allegations to show, with particularity, that Freedom Mortgage had "actual knowledge" of the alleged invalidity of Ms. Khan's mortgage debt, or that the interest and fees at issue were not properly charged to her account. *See* ECF No. 5 at ¶ 67; *see also Fontell*, 870 F. Supp. 2d at 407 (citation omitted). Notably, the complaint is devoid of any factual allegations to show how Freedom Mortgage knew the debt at issue was invalid, or how Freedom Mortgage disregarded such knowledge and continued to seek to collect the debt. *See generally id* at ¶ 65–69. As Freedom Mortgage correctly observes, the complaint also does not allege that Freedom Mortgage acted with reckless disregard of the invalidity of the debt at issue. *Fontell*, 870 F. Supp. 2d 407 (holding that the "knowledge" requirement under the MCDCA requires the plaintiff to show that the defendant either "attempt[ed] to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right).

14

Given this, the factual allegations in the complaint are simply not sufficient to plausibly allege a claim under Section 14-202(8) of the MCDCA. And so, the Court DISMISSES Ms. Khan's MCDCA claim based on Section 14-202(8).

Ms. Khan's MCDCA claim based upon Section 14-202(11) is also implausible. Section 14-202(11) provides that a violation of the MCDCA occurs when a debt collector, engages in any conduct that violates Sections 804 through 812 of the Fair Debt Collection Practices Act. Md. Code Ann., Com. Law § 14-202(11). As Ms. Khan correctly argues, there is no requirement that Freedom Mortgage attempt to enforce a right with actual knowledge, or reckless disregard, about the falsity of the existence of the right, to prevail on a MCDCA claim under this provision. *Parker v. Goldman Sachs Mortg. Co. Ltd. P'shp*, 596 F. Supp. 3d 559, 569 (D. Md. 2022) (citing *Alexander v. Carrington Mortg. Services, LLC*, 23 F.4th 370, 373 (4th Cir. 2022) (holding that "Section 14-202(11) contains no scienter requirement"); Md. Code Ann., Com. Law § 14-202(11). But, Ms. Khan must still allege facts to show, with particularity, how Freedom Mortgage violated Sections 804 through 812 of the FDCPA to prevail on this claim. *Butler*, 2018 WL 2840413, at *4 (holding that a MCDCA claim is subject to the heightened pleading standard under Federal of Civil Procedure 9(b)); *see also* Fed. R. Civ. P. 9(b).

Ms. Khan has not done so here. In fact, beyond the general allegation set forth in paragraph 69 of the complaint-that Freedom Mortgage's attempts to collect increased fees and interest stemming from the "fictitious default and foreclosure" of her home violates Sections 14-202(8) and (11)-the complaint lacks facts to show with particularity how Freedom Mortgage violated Sections 804 through 812 of the FDCPA. *See generally* ECF No. 5. The Court agrees with Freedom Mortgage that, without more detail, Ms. Khan's factual allegations are not sufficient to satisfy the heightened pleading standards under Rule 9(b) and to state a plausible MCDCA claim under Section 14-202(11). And so, the Court also DISMISSES Ms. Khan's MCDCA claim based on Section 14-202(11). Fed. R. Civ. P. 9(b) and 12(b)(6).

## C. The Plaintiff Fails To State A MCPA Claim

As a final matter, Freedom Mortgage also persuasively argues that Ms. Khan fails to state a plausible MCPA claim in this case, because the complaint lacks facts to show, with particularity, how Freedom Mortgage engaged in unfair or deceptive trade practices in violation of the MCPA. To state a claim under the MCPA, Ms. Khan must allege facts to show that: (1) Freedom Mortgage engaged in an unfair or deceptive practice or misrepresentation; (2) Ms. Khan relied upon the misrepresentation; and (3) in relying upon

15

the misrepresentation caused Ms. Khan actual injury. *Barr*, 303 F. Supp. 3d at 416. In addition, her MCPA claim is subject to the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires Ms. Khan to plead "with particularity the circumstances constituting fraud." *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013); *see also* Fed. R. Civ. P. 9(b).

Again, the complaint makes clear that Ms. Khan has not met this pleading standard. In the complaint, Ms. Khan alleges that Freedom Mortgage made materially false and misleading statements, omissions or other representations about the amount due on her mortgage loan, by disguising those the fees under the "Recoverable Corporate Advances moniker." ECF No. 5 at ¶ 74. But the complaint lacks facts to show, among other things: (1) how Ms. Khan was informed of the "Recoverable Corporate Advances," before Freedom Mortgage responded to the August 2024 Letter; (2) how the imposition of the fees and interest on her account was misleading; and (3) how the imposition of these fees caused her to continue to make monthly payments to Freedom Mortgage, given her obligation to make these payments. *See generally id.*

Given this, the Court agrees with Freedom Mortgage that complaint lacks fact allegations that, taken as true, show that: (1) Freedom Mortgage engaged in unfair or deceptive practices, or made a misrepresentation; (2) Ms. Khan relied upon such misrepresentation; and (3) in doing so, Ms. Khan suffered an actual injury. And so, the Court must also DISMISS Ms. Khan's MCPA claim. Fed. R. Civ. P. 9(b) and 12(b)(6).[2]

---

[2] Because the Court concludes that Ms. Khan fails to state plausible MCDCA and MCPA claims in this matter, the Court does not address whether these claims are time-barred.

V.      **CONCLUSION**

For the forgoing reasons, the Court:

       (1) **GRANTS-in-PART** and **DENIES-in-PART** Freedom Mortgage's motion to dismiss (ECF No. 8); and

       (2) **DISMISSES** Counts II and III of the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**


               s/ Lydia Kay Griggsby
               LYDIA KAY GRIGGSBY
               United States District Judge